TEXAS & N. O. R. CO. v. O'CONNOR.
(No. 327.)

(Court of Civil Appeals of Texas. Beaumont.
Feb. 21, 1918.)

CARRIERS ⬤⟐382(6)—EJECTION OF PASSENGER
—EXEMPLARY DAMAGES.

The mere retention in employment by a railroad company of a conductor, after knowledge that he has wrongfully ejected a passenger from its train, does not allow the passenger to secure judgment for exemplary damages against the company; such retention alone not being an adoption or ratification of the malice or violent conduct of the conductor.

Appeal from Orange County Court; D. C. Bland, Judge.

Action by Pat O'Connor against the Texas & New Orleans Railroad Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Orgain, Butler & Bolinger, of Beaumont, for appellant. O. R. Sholars, of Orange, for appellee.

BROOKE, J. This suit was filed in the county court of Orange county on the 26th day of August, 1916, by Pat O'Connor, seeking to recover damages alleged to have resulted to him by being ejected from defendant's train near the station of Tulane on the 1st day of April, 1916, and again on the 13th day of April, 1916. For the alleged expulsion on April 1, 1916, he sought to recover the sum of $200 as actual damages and $250 as exemplary damages, and for the expulsion of date April 13, 1916, he sought to recover the sum of $250 actual and $200 exemplary damages.

In reference to the expulsion of date the 13th day of April, plaintiff alleged that he boarded defendant's train at Orange to go to Tulane, and after said train was under way the conductor in charge of said train demanded fare of plaintiff, and plaintiff paid the said conductor the sum of 40 cents, which amount was more than enough to pay said fare; that the conductor, when said train was three or four miles from Tulane, stopped said train, and abruptly ordered the plaintiff from said train, and proceeded to maliciously and willfully and negligently eject the plaintiff therefrom, without his consent, and without any provocation or cause therefor, and refused to permit plaintiff to again get aboard said train or further travel thereon, and that plaintiff had to walk to Tulane, a distance of about four miles, by reason of which he became fatigued and suffered great bodily pain, being an old man, and that being ejected from said train by said conductor, he was greatly worried, and suffered great mental and physical pain, to his damage in the sum of $250. Plaintiff, in this connection, further alleged that by reason of the premises, he was greatly humiliated, as there were many passengers

on said train who saw plaintiff ejected, and that he suffered great mental pain and humiliation, to his further damage in the sum of $200, which he claims as exemplary damages. Defendant answered by general demurrer and general denial, and special exception.

The case was tried before a jury and submitted on special issues. On the answers of the jury to these special issues, judgment was entered for the plaintiff, and against the defendant below, in the sum of $200 for the ejectment of date April 13th, the jury having found against plaintiff for the ejectment of April 1st. Motion for new trial was overruled, exception was had, and the case is here properly for review.

The first assignment of error is as follows:

"The court erred to the prejudice of the defendant in failing and refusing to give to the jury special charge No. 5, requested by the defendant, which charge is as follows: 'Gentlemen of the jury, at the request of the defendant you are instructed that under the evidence and the pleadings in this cause, the plaintiff is not entitled to recover any damages by reason of the humiliation alleged to have been suffered by the plaintiff on account of his having been put off of defendant's said train upon April 13, 1916.'"

This was claimed to be error, for the reason that under defendant's pleading no damage for humiliation is claimed, except as exemplary damages, and under the undisputed evidence in this case no exemplary damages could be proved by plaintiff as against the defendant.

In addition, it is urged, in connection with this charge, that the defendant requested special charge No. 9, which was as follows:

"Gentlemen of the jury, you are instructed that you cannot allow plaintiff anything or any amount by way of exemplary or punitory damages for being ejected from said train on either of the dates mentioned in plaintiff's petition."

It is urged as a counter proposition by defendant in error, that:

"If the malicious act of the employé of a railroad is ratified or adopted or accepted by his principals, the principal will be held liable in exemplary damages; and where a conductor willfully, wrongfully and maliciously ejects a passenger from the train, and such act is made known to the head of the department, and the conductor is retained in the employ of the company, the company is liable for exemplary damages."

We do not understand the law to be as stated by the defendant in error. In other words, we do not understand that the mere ejection from the passenger train of a railroad company, unaccompanied by any other fact, would permit and allow any person, by that fact alone, to secure against the railroad company a judgment for exemplary damages, even though the railroad company should retain the conductor in its employ.

In the case of Hayes v. H. & G. N. Railroad Co., 46 Tex. 282, the court, through Judge Gould announced the following as a correct legal proposition:

"In the case of Turner v. North Beach & M. R. W. Co., 34 Cal. 600, which was a suit for damages against the company for expulsion from the cars, the court says: 'If her expulsion resulted from the malice of the conductor, or was accompanied by violence and personal indignity, the conductor alone is responsible for such damages as she may be entitled to for this cause, beyond the actual damage resulting from her expulsion from the car, unless, as before stated, the company expressly or tacitly participated in the malice and violent conduct of the conductor. Justice Story says: 'If this were a suit against the original wrongdoers, it might be proper to go yet further, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of the privateer, upon whom the law has, from motives of policy, devolved a responsibility for the conduct of the officers and crew employed by them, and yet, from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in case of loss. They are innocent of the demerit of this transaction, having neither directed it nor countenanced it, nor participated in it in the slightest degree. Under such circumstances, we are of opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants; but they are not bound to the extent of vindictive damages.' * * * It is believed that there is no principle which would attach to a railroad company a greater liability for the acts of the conductor than to the owners of a vessel, for the act of the master."

We are not able to find in any reported case in Texas any contrary doctrine to that announced above, nor are we able from any decision with which we are acquainted, or to which we have been referred, or any case holding that the retention by the railroad company of the services, in such cases as the above, and even stronger cases, would be a ratification of the alleged wrong.

In the case of C., C. & S. F. Ry. Co. v. Reed, 80 Tex. 362, 15 S. W. 1107, 26 Am. St. Rep. 749, there was an action against a railroad company for polluting a stream, running through plaintiff's land; it appearing that defendant's yardmaster at different times threw the carcasses of dead animals into the stream from its bridge at a point about 44 feet from plaintiff's house. Plaintiff complained to the person in charge of defendants office at Houston, and requested him to have the carcasses removed, but nothing was done in the matter. There was no evidence that the person complained to was a general officer of defendant. Held, that there was not such a ratification or adoption by defendant of the wrongful acts of its agents as would render it liable therefor in exemplary damages.

Without going into the matter at length, we are of opinion that these assignments must be sustained, and that the instruction complained of in the second assignment of error should have been given.

The third assignment of error is as follows:

"The jury's answer to question No. 8 is unsupported by the evidence, and the evidence is insufficient to sustain said finding; that the sum of $200 allowed by the jury as damages is grossly excessive and shows that the jury was controlled by some improper motive and some motive independent of the evidence, in that the only evidence of injury is that plaintiff was ejected from defendant's train at a point not exceeding three miles from the station of Tulane and on an April afternoon early in the evening, and before dark; that the day was clear, was not raining, and he suffered no ill, resulting by reason of the walk that he was thereby compelled to take; that the plaintiff is a man 67 or 68 years old, and was physically strong and healthy and used to walking; that the plaintiff made no protest by reason of having been put off and was not physically injured at all; that he knew no one on the train other than those who were ejected with him; that the passengers on said train, other than those of his party, were strangers to him, and, wherefore, it appears that said finding is excessive in amount and unsupported by the evidence, and the evidence is insufficient to support a verdict for that amount."

The court is of opinion that when a correct charge is given by the lower court on another trial of this cause perhaps the result complained of by this assignment as to excessiveness will not be reached.

By reason of the above errors, the judgment is reversed and this cause remanded.